## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALLEN NEELY CAFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-CV-322-NJR-DGW |
| | ) | |
| SEAN HENRY, CHAD HASEMEYER, | ) | |
| LUCAS MAUE, RICHARD MOORE, | ) | |
| MARY RICHARD, and TODD SCOTT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge**

Plaintiff Allen Caffey is an inmate in the custody of the Illinois Department of Corrections at Stateville Correctional Center. He filed this lawsuit under 42 U.S.C. § 1983 alleging that the Defendants violated his constitutional rights while he was incarcerated at Menard and Pontiac Correctional Centers (Doc. 8). Specifically, he alleges that Defendants Chad Hasemeyer, Sean Henry, and Richard Moore retaliated against him for engaging in First Amendment speech by placing him on investigative status and having him transferred out of Menard. He further alleges that Defendant Mary Richard retaliated against him by withholding and damaging his property. Finally, he alleges that Defendants Lucas Maue and Todd Scott used excessive force during his transfer out of Menard and that Scott was also deliberately indifferent to his serious medical needs (Doc. 8).

This matter is currently before the Court on the motion filed by Defendants

Hasemeyer, Henry, Moore, Richard, and Scott seeking partial summary judgment on Plaintiff's claims of retaliation and deliberate indifference (Doc. 52).[1] In response to the Motion for Summary Judgment, Plaintiff filed a number of documents including an "Affidavit And Declaration In Opposition To Defendants Motion For Summary Judgment" (Doc. 55), a "Memorandum of Law in Support of His Response to Defendants Motion for Summary Judgment (Doc. 56), and a "Statement of Disputed Factual Issues" (Doc. 57). Defendants filed a reply (Doc. 58), and Plaintiff filed a sur-reply (Doc. 62). The Court has carefully considered the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, the motion is granted.

## BACKGROUND

On June 29, 2011, while Plaintiff was working in the law library at Menard, another inmate assaulted a correctional officer in the library (Doc. 52-1, pp. 4, 5). It is undisputed that the inmate involved in the assault at the library was a member of the Gangster Disciples ("GDs") (*Id.* at p. 33). According to Plaintiff, he was affiliated with the GDs prior to his incarceration but not at any time while he was at Menard (*Id.* at p. 3). The IDOC's Offender Tracking System indicates, however, that Plaintiff had been affiliated with this "security threat group" since 2001 (*Id.* at p. 33).

Following the assault, Plaintiff and numerous other inmates were taken to be interviewed (Doc. 52-1, pp. 4, 32). As Plaintiff tells it, he was interviewed by Defendants Chad Hasemeyer and Sean Henry (*Id.* at pp. 4, 5). Hasemeyer was a correctional sergeant at Menard, and Henry was a correctional officer; both Hasemeyer and Henry were

---

[1] Defendants Maue and Scott did not move for summary judgment on Plaintiff's claims against them for excessive force.

assigned to the Intelligence Unit (Doc. 52-1, pp. 32, 38). According to Plaintiff, Henry and Hasemeyer told him that he must act as an informant against the GDs or they would take away his job and his "status in general population" (*Id.* at p. 4). Plaintiff refused (*Id.*). Defendant Henry informed Plaintiff that he had been authorized by Defendant Moore to "throw you into confinement and take your job if you don't reconsider." (*Id.* at p. 5). Plaintiff did not change his mind, however, and he told Henry and Hasemeyer that they were acting unprofessionally (*Id.* at pp. 5, 6). Plaintiff was then put on investigative status (*Id.* at p. 33).

Both Hasemeyer and Henry deny interviewing Plaintiff on June 29, 2011 (Doc. 52-1, pp. 32, 38). They claim that, according to the "Investigational Interview" sheet, another correctional officer interviewed Plaintiff (*Id.* at pp. 32, 36, 38). Hasemeyer further indicates that, as a correctional sergeant in the Intelligence Unit, he had the authority to determine whether an inmate should be investigated, and he determined that Plaintiff should be placed on investigative status because he belonged to the same "security threat group" as the inmate who perpetrated the assault, and he was present in the library when the assault occurred (*Id.* at p. 33). Other inmates were also placed on investigative status (*Id.*). Hasemeyer instructed Henry to write the investigative report for Plaintiff, placing him on investigative status for thirty days (*Id.* at pp. 33, 38–39). Henry also was instructed to write similar investigative reports for approximately eight or nine other inmates (*Id.* at pp. 33, 39). After Henry wrote the report on Plaintiff, it was submitted to Major Richard Moore for approval (*Id.* at pp. 33–34). Moore approved it, and Plaintiff was placed on investigative status for thirty days (*Id.*).

When his investigative status ended, Plaintiff was transferred out of Menard to Pontiac (Doc. 52-1, p. 34). Defendant Lucas Maue came to Plaintiff's cell, placed him in handcuffs, and escorted him out of the cell (*Id.* at pp. 8–9). As Plaintiff tells it, Maue was directing him down a flight of stairs and struck him on the head, possibly with the wooden stick that Maue was carrying (*Id.* at pp. 9, 10). Plaintiff was taken to the shower area and strip-searched (*Id.* at p. 10). Then he was led out of the building to a bus (*Id.* at p. 11). Once he boarded the bus, Plaintiff testified that he was "grabbed and put" onto a seat and pressed against the window while Defendant Todd Scott shackled his ankles (*Id.*). Plaintiff asked to see a doctor, at which time Scott told him to "shut up" and pushed his face against the window (*Id.*) Plaintiff testified that he needed a doctor because his head hurt from getting hit, his feet hurt because he was forced to walk barefoot through the prison and out to the bus and his ankles hurt because the shackles were too tight (*Id.* at p. 12, 13).

At the time of Plaintiff's transfer, eighteen or nineteen other inmates affiliated with the same security threat group were also transferred in an effort to maintain institutional safety and security because there had been numerous incidents at Menard involving that group in the preceding months (Doc. 52-1, p. 34). It is undisputed that neither Hasemeyer nor Henry made the decision to transfer Plaintiff from Menard to Pontiac (*Id.* at pp. 34, 39).

Plaintiff's property at Menard was packed on July 31, 2011, and it arrived at Pontiac on August 3, 2011 (Doc. 52-1, pp. 76–77). Defendant Mary Richard was a correctional officer assigned to the Property Unit at Pontiac, and her job was to search

and inventory property as it arrived from other institutions (*Id.* at pp. 76, 77). Defendant Richard searched and inventoried Plaintiff's property twenty days after it arrived at Pontiac (*Id.* at p. 77). Plaintiff testified that his television, typewriter, and lamp were broken, and his gold chain was missing (*Id.* at pp. 15, 16). Plaintiff believes that Richard intentionally destroyed his property and delayed providing it to him in retaliation for the events at Menard. His belief is based on a conversation that he had three weeks after his arrival at Pontiac with correctional officer Best, who told Plaintiff that the reason he had not received his property was because he "pissed some people off at Menard." (*Id.* at p. 14).

Defendant Richard stated that she was not aware of any incident between Plaintiff and Menard staff (Doc. 52-1, p. 77). She further stated that she did not damage Plaintiff's property; it was damaged when it arrived at Pontiac (*Id.*). She also did not intentionally delay processing Plaintiff's property (*Id.*). She generally searches property based on the order in which it was received, and she was not able to inventory Plaintiff's property for approximately three weeks because the property room at Pontiac was understaffed, and there was a significant backlog of property (*Id.* at p. 76, 77).

<u>DISCUSSION</u>

A.  **Legal Standard for Summary Judgment**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the

> record in a light most favorable to the nonmoving party. Because the
> primary purpose of summary judgment is to isolate and dispose of
> factually unsupported claims, the nonmovant may not rest on the
> pleadings but must respond, with affidavits or otherwise, setting forth
> specific facts showing that there is a genuine issue for trial . . . . A mere
> scintilla of evidence in support of the nonmovant's position is insufficient;
> a party will be successful in opposing summary judgment only when it
> presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## B.  Retaliation Against Defendants Hasemeyer, Henry, Moore, and Richard

Plaintiff claims that Defendants Hasemeyer, Henry, and Moore retaliated against him for engaging in protected speech by placing him on investigative status and transferring him out of Menard. He further claims that Defendant Mary Richard retaliated against him by withholding and destroying his property in retaliation for "pissing off" officials at Menard.

At the summary judgment stage, the prisoner has the initial burden to make out a prima facie case of retaliation by showing that that he engaged in speech protected by the First Amendment, he suffered a deprivation likely to deter future protected activity, and the protected activity was at least a substantial or motivating factor in the defendants' actions. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). Only after the prisoner meets this initial burden does the burden shift to the defendants to show that they would have taken the

same action in the absence of the protected conduct. *Thayer*, 705 F.3d at 252; *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012); *Greene*, 660 F.3d at 980. If the defendants fail to counter the prisoner's evidence, then the defendants' retaliatory actions are considered a "necessary condition" of the prisoner's harm, and the prisoner has established the "but-for" causation needed to succeed on his claim. *Kidwell*, 679 F.3d at 965.

### 1. Defendants Hasemeyer, Henry, and Moore

Defendants first argue that Plaintiff cannot establish the first element of the prima facie case: that he engaged in protected speech (Doc. 52, p. 9). According to Plaintiff, he engaged in protected speech when he refused to be an informant and criticized Hasemeyer and Henry for being "unprofessional." But Hasemeyer and Henry dispute that the conversation ever took place. They argue that the record of the investigational interview indicates that they did not conduct the interview, and therefore it is not possible that they asked Plaintiff to be an informant (Doc. 52, p. 9). Consequently, Plaintiff cannot show that the purported protected conduct actually occurred.

In essence, Defendants are asking the Court to find that the conflict between Plaintiff's deposition testimony and the documentary evidence renders Plaintiff's testimony unworthy of belief. But it is not the Court's role to make credibility determinations at the summary judgment stage. *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006); *accord Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) ("[W]e have warned before of falling for the trap of weighing conflicting evidence during a summary judgment proceeding.") Furthermore, contrary to Defendants'

suggestion, this is not a situation in which "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 380-81 (2007). A jury could easily find that another correctional officer conducted the interview with Plaintiff, and that Hasemeyer and Henry had a conversation with Plaintiff afterwards. Accordingly, this argument gets Defendants nowhere at the summary judgment stage.

Defendants next argue that Plaintiff cannot establish causation (Doc. 52, pp. 9–10). They claim that Plaintiff would have been placed on investigative status on June 29, 2011, and ultimately transferred out of Menard, regardless of whatever comments he made to Hasemeyer and Henry. The Court agrees.

Plaintiff claim that Hasemeyer and Henry placed him on investigative status in order to retaliate against him is undercut by the fact that he was not the only inmate interviewed and placed on investigative status following the assault—dozens of inmates were interviewed and at least eight or nine other inmates were the subject of investigative reports. Similarly, Plaintiff's claim that his transfer out of Menard was retaliatory is undermined by the fact that Defendants Hasemeyer, Henry, and Moore did not have any authority when it came to transfer decisions.

Additionally, the evidence demonstrates that there was a legitimate reason independent of any retaliatory motive for both of those actions. Plaintiff was placed on investigative status because he was present when another inmate assaulted a correctional officer in the library, and he was noted to be a member of the same security threat group as that inmate. He was transferred out of Menard because an

administrative decision was made to transfer almost twenty inmates associated with the security threat group due to an increased number of incidents involving that group.

The Court "can say without reservation" that a reasonable juror would be compelled to find that Plaintiff would have been placed on investigative status and transferred out of Menard regardless of any animus Defendants Hasemeyer, Henry, and Moore had toward his protected speech. Accordingly, these Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

### 2. Defendant Mary Richard

Defendant Richard argues that Plaintiff has not set forth competent evidence that his alleged protected speech was a motivating factor in the destruction and withholding of his property (Doc. 52, pp. 11–12). The Court agrees.

First and foremost, there is no indication that Richard knew about Plaintiff's protected activity. In fact, she swore in an affidavit that she had no knowledge of any incident involving Plaintiff and the staff at Menard (Doc. 52-1, p. 76). Second, there is no evidence from which it can be inferred that Richard destroyed and withheld Plaintiff's property in order to retaliate against him for his speech. She swore that his property was already broken when it arrived at Pontiac (*Id.* at p. 77). She also swore that she did not intentionally delay the processing of Plaintiff's property; the property unit was shortstaffed and dealing with a significant backlog of property when Plaintiff arrive at Pontiac (*Id.*).

In an attempt to defeat summary judgment, Plaintiff claims that Officer Best, who is now deceased, told him that his property was being intentionally withheld because he

made prison officials at Menard angry (Doc. 56, pp. 15–16). Officer Best's statement is inadmissible hearsay, and Plaintiff has not established that an exception exists. *See* FED. R. EVID. 801(c), 804. Even if Officer Best's statement was admissible, it is nothing more than a generalized statement of belief that cannot overcome Defendant Richard's attestations about her individual conduct.

Accordingly, Defendant Richard has established that no genuine issue of material fact exists, and she is entitled to judgment as a matter of law on Plaintiff's claim of retaliation against her.

## C.  Deliberate Indifference Against Defendant Scott

Plaintiff claims that Defendant Scott was deliberately indifferent to his serious medical need because Scott ignored Plaintiff's request for medical attention after he was placed on the bus. In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Second, the plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *Greeno*, 414 F.3d at 653.

Defendant Scott argues that Plaintiff cannot establish a genuine issue of material fact with regard to either prong of the deliberate indifference analysis. Scott contends that Plaintiff was not suffering from a serious medical (Doc. 52, p. 13). Scott further

contends that, even if Plaintiff was suffering from a serious medical need, he did not consciously disregard any risk to Plaintiff's health (Doc. 52, p. 15). The Court agrees with both arguments.

An objectively serious medical need includes "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessary for a doctor's attention."). "Notably, '[a]medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)).

Plaintiff testified that he was suffering pain from the bump on his head, and his feet were injured from having to walk barefoot over gravel. Plaintiff also admitted, however, that his head was not bleeding and neither were his feet, and he was only having "a little pain" (Doc. 52-1, pp. 12, 13). Based on Plaintiff's own testimony, it is evident that his injuries were very minor. A bump on the head and scrapes are the types of ailments for which many individuals, inmates and non-inmates alike, would not seek medical treatment. These injuries unquestionably do not significantly affect an

individual's daily activity or cause substantial pain. No reasonable juror could find that he suffered from an objectively serious medical condition.

Even if Plaintiff had a serious medical condition, there is no indication that Scott was deliberately indifferent to that condition. Deliberate indifference "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution.") A prison official acts with deliberate indifference if they know of a serious risk to the prisoner's health and consciously disregard that risk. *Holloway*, 700 F.3d at 1073. Put differently, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Greeno*, 414 F.3d at 653 (citation omitted).

Here, Defendant Scott knew that Plaintiff would be seen by a doctor within a matter of hours because it is it standard procedure for an inmate to be seen by medical personnel upon arriving at the new prison. And Plaintiff was, in fact, seen by medical personnel after he arrived at Pontiac. It is clear that Scott did not consciously disregard Plaintiff's purported need for medical care; he simply made him wait five hours to receive it. And making him wait was not reckless, or even negligent, because Plaintiff did not have any readily apparent injury that would signal to a lay person that he required immediate emergency medical attention.

In sum, after considering the facts in the light most favorable to Plaintiff, the Court finds that he has failed to demonstrate a genuine issue of material fact that Defendant Scott was deliberately indifferent to his serious medical need. Accordingly, Scott is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

## D. Excessive Force against Defendants Maue and Scott

Plaintiff claims that both Defendant Maue and Defendant Scott used excessive force during his transfer out of Menard. Neither Maue nor Scott sought summary judgment on this claim. Nevertheless, the Court is inclined to grant summary judgment for both and can do so under Federal Rule of Civil Procedure 56(f) after giving Plaintiff a reasonable time to respond.

"The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). But "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw*, 259 F.3d at 838 (quoting *Hudson*, 503 U.S. at 9). "The use of *de minimis* force, so long as it 'is not of a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). If the force was more than *de minimis,* the core judicial inquiry is whether it "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Lewis*, 581 F.3d 467 (quoting *Hudson*, 503 U.S. at 7) (internal quotation marks omitted).

Plaintiff claims that Defendant Scott used excessive force when he shackled him too tightly on the bus and pushed his face into the window. The evidence before the Court demonstrates that the force used by Scott, while perhaps unnecessary, was *de minimis* and certainly not "repugnant to the conscious of mankind." Additionally, Plaintiff testified that Scott's conduct was probably not intentional (Doc. 52-1, p. 13), much less malicious and sadistic for the purpose of causing harm. Finally, Plaintiff made no argument and presented no evidence that Scott's actions caused him any actual injury. Consequently, no reasonable jury could find that Scott used excessive force.

As for Defendant Maue, Plaintiff claims that he used excessive force when he hit Plaintiff over the head. While the use of force was deliberate and perhaps unnecessary, it was not so savage that it could be considered "repugnant to the conscience of mankind." And the bump and headache that Plaintiff purportedly suffered were quite minor. While Defendant Maue's conduct cannot be condoned, it does not amount to a constitutional violation. *See Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (finding no Eighth Amendment violation when use of force caused superficial injury to prisoner's hand); *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (finding no excessive force where guard shoved inmate into door frame and caused bruising on inmate's back); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) (finding no Eighth Amendment violation where prison guard poured bucket of water on prisoner and caused the bucket to hit prisoner on the head, which caused daily headaches but did not prevent him from working).

For these reasons, summary judgment will be granted in favor of Defendants

Maue and Scott on Plaintiff's claim of excessive force *unless* Plaintiff submits a response demonstrating that a genuine issue of fact still exists.

<u>CONCLUSION</u>

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Hasemeyer, Henry, Moore, Richard, and Scott seeking partial summary judgment on Plaintiff's claims of retaliation and deliberate indifference (Doc. 52) is **GRANTED**. Defendants Hasemeyer, Henry, Moore, and Richard are **DISMISSED with prejudice** from this action. Plaintiff's deliberate indifference claim against Defendant Scott is also **DISMISSED with prejudice**.

This matter proceeds only on Plaintiff's claim of excessive force against Defendant Maue and Defendant Scott. Plaintiff is **ORDERED to submit a response, within thirty days of the entry of this Order (on or before April 30, 2015)**, demonstrating why summary judgment should not be granted in favor of Maue and Scott. Plaintiff's response should include not only argument, but also appropriate evidence. Once Plaintiff has filed his response, Defendants shall have thirty days to file their own response if they deem it necessary.

**IT IS SO ORDERED.**

**DATED:   March 30, 2015**

**s/ Nancy J. Rosenstengel**
**NANCY J. ROSENSTENGEL**
**United States District Judge**